UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CA 07 460

YELDEZIENA CONDOR,
Plaintiff,

v.

C.A. No. 07-

GEICO GENERAL LIABILITY
INSURANCE COMPANY,
SUMMIT INSURANCE COMPANY,
And NEW LONDON COUNTY MUTUAL
INSURANCE COMPANY,
Defendants.

**COMPLAINT**

**PARTIES**

1. Plaintiff, Yeldeziena Condor, (hereinafter, “Condor” and/or “Plaintiff”) is a citizen of the City of Providence, State of Rhode Island.

2. Upon information and belief, defendant, GEICO General Liability Insurance Company (“GEICO”), is a corporation having its citizenship and principal place of business in the State of Maryland and is authorized to engage in the business of insurance in the State of Rhode Island.

3. Upon information and belief, defendant, Summit Insurance Company (“Summit”), is a corporation having its citizenship and principal place of business in the State of Connecticut and is authorized to engage in the business of insurance in the State of Rhode Island.

4. Upon information and belief, defendant, New London County Mutual Insurance Company (“NLC”), is a corporation having its citizenship and principal place of business in the State of Connecticut and is authorized to engage in the business of insurance in the State of Rhode Island.

5. Upon information and belief, NLC is the successor in interest to, an affiliate of, or has acquired, or is a parent company of or is acting in concert with Summit, and all references to Summit shall be deemed to include NLC and all references to NLC shall be deemed to include Summit.

6. Upon information and belief, "New London Connecticut Insurance Company" is a fictitious name and/or misnomer for NLC and/or Summit, and all references to "New London Connecticut Insurance Company" shall be deemed to include Summit and/or NLC.

## JURISDICTION AND VENUE

7. Upon information and belief, GEICO, Summit and NLC have at all times relevant hereto been authorized to engage in the business of insurance in the State of Rhode Island and are subject to the jurisdiction of this court.

8. This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this is a civil action wherein the matter in controversy exceeds the value of $75,000 (exclusive of interest and costs) and is between citizens of different states.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), since the events giving rise to the plaintiff's claims occurred or had their effect within this judicial district.

## FACTUAL BACKGROUND
### The Accident of August 24, 2002 and Plaintiff's Personal Injuries

10. On or about August 24, 2002, on Elmwood Avenue at or near its intersection with McKinley Street, public highways in the City of Providence, State of Rhode Island, a motor vehicle owned by Isalete Almeida and being operated with her permission by Michael Ramos was driven in such a reckless or negligent manner that it collided with the motor vehicle owned by Joseph Ferri and being operated with his permission by Condor.

11. As a direct result of the negligence of Michael Ramos, Condor was thrown about in her vehicle, sustained injuries to her person and has endured pain and suffering, incurred medical bills and lost wages and/or suffered a loss of earning capacity, has permanent physical impairment, has been unable to carry on and conduct all of her normal daily activities, and will continue to experience some or all of these problems and damages over a life expectancy in excess of thirty (30) years, and has otherwise been greatly damnified.

**The Insurance Policies applicable to Plaintiff's Claims for Damages**

12. At the time of the accident the vehicle operated by Michael Ramos and owned by Isalete Almeida was insured by Merchants Mutual Insurance Company ("Merchants") under a policy of automobile liability insurance with applicable limits of one hundred thousand ($100,000) dollars ("the Merchants policy").

13. At the time of the accident, GEICO had issued an automobile liability insurance policy to John Laroche, that was in full force and effect, included plaintiff as a named insured and driver, and provided uninsured/underinsured motorist coverage with applicable limits of fifty thousand ($50,000) dollars ("the GEICO policy").

14. At the time of the accident Summit had issued an automobile liability insurance policy to Joseph Ferri, which was in full force and effect, provided coverage to plaintiff as she was the operator of the insured vehicle and provided uninsured/underinsured motorist coverage with applicable limits of one hundred thousand ($100,000) dollars ("the Summit policy").

**Settlement under the Merchants Policy**

15. Merchants agreed that plaintiff's damage claims would exceed the limits of the Almeida/Ramos policy, thus offering to pay Condor the entire $100,000 available to her under its provisions.

16. As required by Rhode Island law, plaintiff thereupon sought written permission from GEICO and Summit to accept the offer that Merchants had made, reserving nevertheless the right to thereafter present underinsured motorist ("UIM") claims against both insurers.

17. By letter dated June 21, 2004, Summit assented to such settlement with Merchants. A copy appears at **Exhibit One** and is incorporated herein, by reference.

18. By letter dated July 16, 2004, GEICO assented to such settlement with Merchants. A copy appears at **Exhibit Two** and is incorporated herein, by reference.

19. After receiving the written permission of GEICO and Summit described above, Condor settled her claims against Merchants and its insureds, executing a release that specifically acknowledged that she reserved her rights to proceed against the underinsured motorist policies issued by GEICO and Summit. A copy of such release appears at **Exhibit Three** and is incorporated herein, by reference.

**Underinsured Claim Activity Involving GEICO**

20. By letter dated March 2, 2006, plaintiff made a written offer to GEICO to settle her claim in an amount equal to or less than the coverage limits on the liability policy in force at the time her claim accrued pursuant to Rhode Island General Laws § 27-7-2.2. A copy appears at **Exhibit Four** and is incorporated herein, by reference.

21. By letter dated March 8, 2006, GEICO denied the claim, stating that it was "premature" on the pretext that Condor had not forwarded medical records for an unrelated injury to her right knee/leg in 1998 and an injury to her right hand in 2000. A copy appears at **Exhibit Five** and is incorporated herein, by reference.

22. In fact, plaintiff had provided these medical records to GEICO on December 14, 2005, a copy a covering letter in that regard appears at **Exhibit Six** and is incorporated herein, by reference.

23. GEICO has no defenses, in fact or law, for denying payment to plaintiff under these circumstances.

24. GEICO is or should be aware that it is the policy of the State of Rhode Island to encourage the settlement of controversies in lieu of litigation, and that it is under an equivalent duty to participate in settlement negotiations pursuant to *Skaling v. Aetna*, 799 A.2d 997 (R.I. 2002).

25. GEICO has acted in conscious, reckless disregard of its responsibilities as aforesaid, thus its actions constitute a bad faith failure or refusal to properly resolve plaintiff's claims short of litigation.

**Underinsured Claim Activity involving Summit**

26. By letter to Summit dated August 6, 2003 plaintiff advised of a possible underinsured motorist claim.

27. By letter to plaintiff dated August 25, 2003, Summit falsely stated, "Please be advised that our UIM limits are equal to the tortfeasor's Bodily Injury limits; therefore, there is no UIM exposure." A copy appears at **Exhibit Seven** and is incorporated herein, by reference.

28. Summit's August 25, 2003, statement is incorrect, false and untrue, contrary to the law of the State of Rhode Island, contrary to the Summit policy, and was made recklessly and in bad faith.

29. As an insurance company authorized to do business in the State of Rhode Island, Summit knew, or should have known, that Rhode Island law permits recovery of UIM benefits when the available limits are equal to a tortfeasor's bodily injury liability limits.

30. By letter to Summit dated March 2, 2006, Condor made a written offer to settle her claims in an amount equal to or less than the coverage limits on the liability policy in force at the time her claims accrued pursuant to Rhode Island General Laws § 27-7-2.2. A copy appears at **Exhibit Eight** and is incorporated herein, by reference.

31. Plaintiff's written offer has been and is presumed to be rejected by Summit because Summit did not respond in writing within a period of thirty (30) days pursuant to Rhode Island General Laws § 27-7-2.2.

32. Summit has no defenses, in fact or law, for denying payment to plaintiff under these circumstances.

33. Summit is or should be aware that it is the policy of the State of Rhode Island to encourage the settlement of controversies in lieu of litigation, and that it is under an equivalent duty to participate in settlement negotiations pursuant to *Skaling v. Aetna*, 799 A.2d 997 (R.I. 2002).

34. Summit has acted in conscious, reckless disregard of its responsibilities as aforesaid, thus its actions constitute a bad faith failure or refusal to properly resolve plaintiff's claims short of litigation.

**Activity by Smith & Brink, Agents for Summit and/or NLC**

35. By letter dated June 12, 2006, plaintiff was advised by an attorney at Smith & Brink, P.C., ("Smith & Brink") that Smith & Brink had "been retained by New London County Mutual

Insurance Company (NLC) to assist them (sic) in their (sic) investigation of your client's claim submitted against Joseph Ferri (sic). I have been retained to provide legal advise (sic) and counsel for Joseph Ferri (sic)." The letter then stated "Please be advised that at this time Summit Insurance Company hereby names Attorney Amy Berretta as arbitrator on their (sic) behalf." A copy appears at **Exhibit Nine** and is incorporated herein, by reference.

36. The June 12, 2006, Smith & Brink letter never stated what relationship, if any, existed between NLC and Summit.

37. Joseph Ferri was insured by Summit, not NLC, as demonstrated by the policy declaration sheet. A copy appears at **Exhibit Ten** and is incorporated herein, by reference.

38. The June 12, 2006, Smith & Brink letter falsely and incorrectly stated or implied that plaintiff had made or was entitled to make a claim against Joseph Ferri, when in fact she had made no claim against Mr. Ferri, and was pursuing a contract claim for UIM benefits against Summit.

39. At a subsequent Examination Under Oath conducted by Smith & Brink, the transcript cover page indicates an appearance by Smith & Brink as "Counsel for the Defendant" under the caption "In Re: Yeldeziena Condor v. Joseph Ferri." A copy appears at **Exhibit Eleven** and is incorporated herein, by reference.

40. On or about September 6, 2007, Smith & Brink filed a Miscellaneous Petition purportedly on behalf of the "New London Connecticut Insurance Company," (also referred to as "NLC"), claiming that Condor had a claim for UIM benefits under a policy issued not by NLC and/or Summit, as previously represented, but by a third company, New London Connecticut Insurance Company. A copy appears at **Exhibit Thirteen**, below, and is incorporated herein, by reference.

41. Upon information and belief, "New London Connecticut Insurance Company" does not exist in any state in the United States and was not authorized to transact business in the State of Rhode Island.

42. This petition never stated or described the purported relationship between New London Connecticut Insurance Company and New London County Mutual Insurance Company, if any, or the relationship between New London Connecticut Insurance Company and Summit Insurance Company, if any.

43. The actions of Smith & Brink, P.C., were the acts of an agent or agents of disclosed principals are thus are attributable to such principals. Summit and/or NLC, by and through its agents, Smith & Brink, have, in bad faith, deliberately attempted to deceive, confuse, confound and mislead plaintiff with regard to the true identity of the corporate entity that issued the policy under which she must claim benefits and her obligations in making a UIM claim.

**COUNT I**
**Breach of Contract – GEICO**

44. Paragraphs 1, 2, 7-13, 15-16, and 18-25 above are restated and incorporated by reference.

45. Plaintiff is an insured under the GEICO/Laroche policy and is entitled to uninsured/underinsured motorist benefits under the GEICO policy because her damages are in excess of the liability insurance coverage available from the tortfeaser.

WHEREFORE, plaintiff demands judgment against GEICO for the policy limits in the amount of $50,000, plus interest and costs.

**COUNT II**
**Bad Faith – GEICO**

46. Paragraphs 1, 2, 7-13, 15-16, 18-25, and 45 above are restated and incorporated herein, by reference.

47. GEICO's actions constitute violations of Rhode Island General Laws § 9-1-33 and *Skaling v. Aetna*, 799 A.2d 997 (R.I. 2002).

48. GEICO's bad faith failure and/or refusal to negotiate has caused plaintiff increased expenses and legal fees, entitling her to compensatory damages, and such other damages (including exemplary damages) as may be appropriate in the circumstances.

WHEREFORE, plaintiff demands judgment against GEICO for compensatory and/or exemplary damages, plus interest, costs and attorney fees.

**COUNT III**
**Breach of Contract – Summit**

49. Paragraphs 1, 3-12, 14-17, 26-43 above are restated and incorporated herein, by reference.

50. Plaintiff is an insured under the Summit/Ferri policy and is entitled to UIM benefits under the Summit policy because her damages are in excess of the liability insurance coverage available from the tortfeaser.

WHEREFORE, plaintiff demands judgment against Summit for the policy limits in the amount of $100,000, plus interest and costs.

**COUNT IV**
**Bad Faith – Summit**

51. Paragraphs 1, 3-12, 14-17, 19, 26-43 and 50 above are restated and incorporated herein, by reference.

52. Summit's actions constitute violations of Rhode Island General Laws § 9-1-33 and *Skaling v. Aetna*, 799 A.2d 997 (R.I. 2002).

53. Summit's bad faith failure and/or refusal to negotiate has caused plaintiff increased expenses and legal fees, entitling her to compensatory damages, and such other damages (including exemplary damages) as may be appropriate in the circumstances.

WHEREFORE, plaintiff demands judgment against Summit for compensatory and/or exemplary damages, plus interest, costs and attorney fees.

**COUNT V**
**Bad Faith – NLC/Summit**

54. Paragraphs 1, 3-12, 14-17, 19, 26-43, 50 and 52-53 above are restated and incorporated herein, by reference.

55. The actions of Summit and/or NLC constitute violations of Rhode Island General Laws § 9-1-33 and *Skaling v. Aetna*, 799 A.2d 997 (R.I. 2002).

56. The bad faith failure and/or refusal of Summit and/or NLC's to negotiate has caused plaintiff increased expenses and legal fees, entitling her to compensatory damages, and such other damages (including exemplary damages) as may be appropriate in the circumstances.

WHEREFORE, plaintiff demands judgment against Summit and/or NLC, for compensatory and/or exemplary damages, plus interest, costs and attorney fees.

**COUNT VI**
**Abuse of Process**

57. Paragraphs 1, 3-12, 14-17, 19, 26-43, 50, 52-53 and 55-56 above are restated and incorporated herein, by reference.

58. Rhode Island General Laws § 10-3-2, reads, in pertinent part: "in all contracts of primary insurance, wherein the provision for arbitration is not placed immediately before the testimonium clause or the signature of the parties, the arbitration procedure may be enforced at the option of the insured." (Emphasis added).

59. The arbitration clause in the Summit policy was not placed immediately before the testimonium clause or the signature of the parties, and in fact plaintiff never even signed the Summit policy, and thus the arbitration procedure could be enforced only at her option.

60. As an insurance company authorized to do business in the State of Rhode Island, Summit knew, or should have known, that plaintiff could not possibly be compelled to arbitrate her claim against Summit because the arbitration procedure could be enforced only at her option.

61. By letter dated May 4, 2007, plaintiff advised Summit that arbitration was not required under the Summit policy, citing Rhode Island General Laws § 10-3-2 and the case of *Pacheco v. Nationwide Mutual Insurance Company*, 114 R.I. 575 (1975). A copy appears at **Exhibit Twelve** and is incorporated herein, by reference.

62. Despite being apprised of §10-3-2 and the Pacheco case, Summit wrote to plaintiff on June 12, 2006, October 2, 2006, November 22, 2006, December 13, 2006, December 21, 2006, April 27, 2007 and May 18, 2007, insisting that Condor select an arbitrator.

63. Despite knowledge of the law, "New London Connecticut Insurance Company" filed a Miscellaneous Petition to Compel Arbitration and Stay Interest in the Providence County Superior Court on September 6, 2007. A copy appears at **Exhibit Thirteen** and is incorporated herein, by reference.

64. "New London Connecticut Insurance Company" falsely alleged that it had issued an automobile insurance policy to Joseph Ferri.

65. "New London Connecticut Insurance Company" is not authorized to engage in the business of insurance in the State of Rhode Island.

66. The petition falsely stated that plaintiff had not made a settlement demand when, in fact, *a settlement demand for the policy limits had been made on March 2, 2006.*

67. The petition falsely stated that plaintiff's failure to name an arbitrator amounted to a breach of the contract for UIM benefits, when in fact arbitration was *at the option of the insured* pursuant to Rhode Island General Law § 10-3-2.

68. The petition demanded that plaintiff be ordered to file suit to pursue her claim against "New London Connecticut Insurance Company" a demand unsupported by any law, policy or precedent and, indeed, contrary to the *Skaling* opinion.

69. The petition demanded that prejudgment interest be "stayed" because Condor had "failed to proceed to arbitration as required," a demand unsupported by any law, policy or precedent.

70. Condor responded to the petition and on October 9, 2007, following a hearing in the state Superior Court, the petition of "New London Connecticut Insurance Company" to Compel Arbitration was DENIED. A copy of the order appears at **Exhibit Fourteen** and is incorporated herein, by reference.

71. The Petition to Compel Arbitration filed by "New London Connecticut Insurance Company" had no basis on law or fact, contained false information and was filed in bad faith in an attempt to circumvent the law and for the further improper purpose of attempting to limit Condor's ability to seek prejudgment interest and requiring her to arbitrate and/or litigate her claims without negotiation.

72. The Petition to Compel Arbitration filed by "New London Connecticut Insurance Company" was undertaken for improper and illegitimate reasons unrelated to and without reasonable belief in the truth of the allegations contained therein, and thus constitutes a form of extortion and an abuse of legal process.

73. The miscellaneous petition was filed by Summit and/or NLC under a fictitious name and was objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits

74. Defendants Summit and/or NLC instituted proceedings against Condor in an attempt to obtain an ulterior or wrongful purpose for which the proceedings were not designed.

75. As a direct result of these actions by Summit and/or NLC plaintiff sustained damages.

76. Given the fact that such proceeding was terminated in Condor's favor, and that no appeal has ensued, Condor is presently entitled to all her damages and expenses caused by having to respond to this disuse of process, including exemplary damages.

WHEREFORE, plaintiff demands judgment against Summit and/or NLC for compensatory and/or exemplary damages, plus interest, costs and attorney fees.

**JURY DEMAND**

Plaintiff demands a trial by jury on all counts and all issues so triable.

YELDEZIENA CONDOR,
By her attorney,

John B. Reilly ( #1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, Rhode Island 02903
Phone 401-272-2800
Fax 401-272-2811