UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

YELDEZIENA CONDOR
Plaintiff

vs. C.A.NO.: 07-460 ML

GEICO GENERAL LIABLITY
INSURANCE COMPANY, SUMMIT
INSURANCE COMPANY and NEW
LONDON COUNTY MUTUAL
INSURANCE COMPANY
Defendant

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEVER & STAY COUNTS IV, V, and VI OF PLAINTIFF'S COMPLAINT**
[Fed.R.Civ.P. 42(b)]

## I. FACTS AND TRAVEL

This matter arises out of a motor vehicle accident which occurred on August 24, 2002. The plaintiff was operating a vehicle owned by Joseph Ferri when it was involved in an accident with a vehicle operated by Michael Ramos. Plaintiff was injured as a result of the accident and was compensated by Merchant's Mutual, the insurer of the tortfeasor, in the amount of $100,000.

On December 13, 2007 plaintiff filed the present lawsuit, seeking underinsurance benefits and alleging breach of contract, bad faith and abuse of process.

## II. ARGUMENT

Pursuant to Federal Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed.R.Civ.P. 42(b).

"Bad faith claims under Rhode Island law are generally severed from breach of insurance contract claims for purposes of discovery and trial." See, Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002); Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997 (R.I. 1988); Taco, Inc. v. Fed. Ins. Co., 2007 U.S. Dist. LEXIS 88504, 2-3 (D.R.I. Nov. 30, 2007). As the Rhode Island Supreme Court reasoned in Corrente v. Fitchburg Mutual Fire Ins. Co., 557 A.2d 859 (R.I. 1989):

> Since the burden of proof on a bad-faith claim is so formidable, we are of the opinion that whether or not a discovery issue is involved, it is inherently prejudicial for a trial justice to decline to sever that claim from a breach-of-contract claim.

Id. at 862.

More recently, the Rhode Island Supreme Court, in Skaling held:

> [B]ad faith is established when the proof demonstrates that the insurer denied coverage or refused payment without a reasonable basis in fact or law for the denial. **We deem this rule to be of particular significance in this jurisdiction because claims of insurer bad faith are severed and tried separately from the breach of insurance contract claim, a procedure that provides the insurer with significant procedural protections, including non-disclosure of its file until the completion of the breach of contract action.**

Skaling, 799 A.2d at 1010. (Emphasis Added). See also, Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1261 (R.I. 2003) ("To succeed on a common law bad-faith claim in Rhode Island, a plaintiff must demonstrate the absence of a reasonable basis for denying the policy benefits and that defendant had knowledge or recklessly disregarded the lack of a reasonable basis for denying the claim.").

Factors analyzed in determining whether to grant the stay include, judicial efficiency, issues of fairness, convenience of parties, and the possibility of prejudice to the parties. See, Godhammer v. Dunkin Donuts, 59 F. Supp. 2d 248, 252 (D.Mass. 1999)

Here there are two occurrences, the automobile accident where the plaintiff was injured, and the alleged breach of a duty by the insurers in handling the plaintiff's claim.

They are distinct events occurring at different times. The defendant's motion to sever and stay until such time as the underlying contract action is resolved is predicated on the distinct differences in the facts and issues which will be raised and litigated in those claims.

The likelihood for prejudice and confusion is high, given the different standards of proof required in connection with the underlying contract claim versus proving a bad faith claim as well as the different evidence which is discoverable and admissible in each.

Bifurcation and a stay would avoid substantial and unnecessary prejudice to the defendant insurers. The defendants' will be prejudiced throughout the discovery phase and at the time of trial in this instant case by having to produce testimony and documentation concerning evidence to establish its lack of bad faith. A number of issues that are relevant to a bad faith claim are simply not relevant or discoverable in the contract action, such as the claim's adjuster's mental impressions and work product.

The bad faith action will involve testimony possibly from plaintiff's counsel and representatives of the insurance companies with regard to the claims handling. In addition, testimony will be presented as to the parties' respective versions regarding what occurred during the course of the claims handling aspect of the plaintiff's case and whether those actions amounted to bad faith on the part of the insurance companies.

Discovery on the plaintiff's bad faith claim against the insurance companies and the trial of that claim should be severed from the underlying contract action and stayed until said action is tried and a final determination is made. Any discovery requests or subpoenas framed by the plaintiff in the bad faith and abuse of process portions of this action will necessarily and unavoidably include any investigation which has been

conducted into the plaintiff's claims, and any decisions which have been made by, for, or on behalf of the insurance companies relative to the plaintiff's claims in the contract action. Similarly, discovery conducted by the insurance companies into the plaintiff's bad faith claim would also include an inquiry into documents, such as, but not limited to, the file of the plaintiff's counsel. This discovery would unavoidably involve the production of documents, records and materials protected as work product and/or containing information or statements protected by the attorney/client privilege and/or protected as prepared in anticipation of litigation or in preparation of trial.

Consequently, permitting the parties to litigate the bad faith claims, while carrying out discovery in the underlying contract action, would grant the parties access to materials and information which they would not otherwise be entitled to, but for the plaintiff having named the insurance companies as defendants in this action. Access to such materials creates the potential for prejudice to the insurance companies, in the underinsured action. The thoughts, impressions, and opinions, which either the insurance companies or its legal counsel have developed on liability, damages, settlement values, and verdict value, may be subject to disclosure.

Plaintiff's attorneys and agents will also be deposed. The plaintiff had no direct dealings with NLC Insurance Company in the handling of its underinsurance motorist (UIM) claim. Instead, the communications with NLC Insurance Company and with counsel for NLC Insurance Company were handled by the plaintiff's attorneys. There is a substantial probability that plaintiff's attorneys will become witnesses. The plaintiff's counsel cannot, however, be both a witness and an advocate in the same case. Under the Rules of Professional Conduct a lawyer shall not act as an advocate at a trial in which he

is likely to be a necessary witness except in three instances, none of which are applicable here.

If Plaintiff is allowed to litigate its bad faith claim before final determination of the breach of contract claim, the insurance companies may be irreparably prejudiced as, without bifurcation of the claims, Plaintiff will necessarily be permitted to make inflammatory arguments at trial concerning the insurers conduct in adjusting the insurance claim. Evidence and arguments regarding claim handling may then be submitted to the jury and will serve to confuse the issues, distract the jurors from a fair determination of whether Plaintiff has proven its contract claim and unfairly prejudice the jurors against the insurance companies. It is difficult to conceive that a jury, after hearing inflammatory allegations, will be able to make a fair determination on the coverage issue as to whether the insurance companies actually breached the policy based upon the evidence presented and not based upon Plaintiff's arguments.

A trial on the breach of contract claim may render the bad faith actions moot. The issues relative to the plaintiff's bad faith claim cannot be properly framed until such time as the issues of liability and damages have been resolved in the contract action. To satisfy the statutory definition of 'uninsured motorist,' a claimant must present proof of damages that they are legally entitled to recover. R.I.G.L. § 27-7-2.1. "[I]n order to invoke uninsured/underinsured coverage, it is necessary to determine whether the tortfeasor's liability policy limit is less than the actual amount of damages sustained by the claimant, damages that the claimant is legally entitled to recover from the tortfeasor." C.G.U. Ins. Co. v. DeCaro, 791 A.2d 480, 481 (R.I. 2002). See also, Gen. Accident Ins. Co. of Am. v. Cuddy, 658 A.2d 13, 16-17 (R.I. 1995). If it is determined that the

damages flowing from the accident do not exceed the settlement reached with the tortfeasor then the plaintiff is not entitled to underinsured motorist coverage and there was no breach of contract or bad faith. Until a judgment on the contract action has been rendered it cannot be determined whether the defendant insurers acted reasonably in responding to the plaintiff's claim for damages. The plaintiff's bad faith claim is, therefore, premature.

Judicial economy and efficient judicial administration would be furthered by staying this action until such time as the contract action is resolved. Allowing this matter to proceed will prejudice both parties and reveal materials obtained in anticipation of litigation.

Federal courts which have considered the issue of bifurcation under Federal Rule of Civil Procedure 42(b) have generally severed the bad faith claim from the breach of contract claim. See, Aetna Cas. & Sur. Co., v. Nationwide Mut. Ins. Co., 734 F. Supp. 204, 208 (W.D.Pa. 1989) (granting the motion to bifurcate coverage and bad faith issues because of the substantial risk of prejudice to the insurer); accord, Schmidt v. California State Auto Ass'n, 127 F.R.D. 182, 185 (D.Nev.1989) (citing Rhode Island's *per se* rule, "separate trials on insurance coverage and bad faith claims should be ordered in order to avoid prejudice to the [insurer] on the breach of contract claim which could arise from the introduction of evidence pertaining to plaintiff's bad faith claim".) O'Malley v. United States Fidelity and Guaranty Co., 776 F.2d 494, 500-501 (5th Cir. 1985) (holding that a district court properly bifurcated the coverage and bad faith issues because recovery on the bad faith claim would have been precluded if the insured had not prevailed on the breach of contract claim).

## III. CONCLUSION

For the foregoing reasons, the Defendants respectfully submit that their motion to sever and stay be granted.

Respectfully Submitted,
New London County Mutual
Insurance Company and the Summit
Insurance Company,
By their attorney,

/s/ Ronald Langlois
Ronald Langlois, Esq. #2891
Smith & Brink, P.C.
One State Street, Suite 400
Providence, RI 02908
Tel: (401) 351-9970

## CERTIFICATION

I hereby certify that on this 26th day of June, 2008, I mailed a true and accurate copy of the enclosed to:

John Reilly, Esq.
100 North Main Street, 4th Floor
Providence, RI 02903

Jeffrey Finn, Esq.
24 Spring Street
Pawtucket, RI 02860

/s/Ronald Langlois