**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

YELDEZIENA CONDOR
Plaintiff

vs. C.A. No. 07-460 ML

GEICO GENERAL INSURANCE COMPANY; SUMMIT INSURANCE COMPANY and NEW LONDON COUNTY MUTUAL INSURANCE COMPANY
Defendants

**PLAINTIFF'S MEMORANDUM SUPPORTING HER OBJECTION TO THE MOTION OF DEFENDANTS, SUMMIT INSURANCE COMPANY AND NEW LONDON COUNTY MUTUAL INSURANCE COMPANY TO "SEVER AND STAY" COUNTS IV, V and VI OF PLAINTIFF'S COMPLAINT PURSUANT TO RULE 42(b)**

Defendants, Summit Insurance Company ("Summit") and New London County Mutual Insurance Company ("NLC")(also sometimes hereinafter jointly referred to as "defendants") have moved, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure ("F.R.C.P.") to "sever and stay" counts IV, V and VI of plaintiff's complaint[1]

Plaintiff, Yeldeziena Condor (hereinafter, "Condor" and/or "Plaintiff") has objected to such motion and supports her opposition with this memorandum of law.

---

[1] As of the time of the filing of defendants' motion, there was or is another motion pending before the court, seeking to allow plaintiff to amend her complaint on the basis of newly discovered evidence of a second "GEICO" policy. If true and applicable, this would act to reduce the percentage contract liability of the moving defendants and they have filed no objection to that motion. If allowed, the amended complaint's counts numbered IV, V and VI would and will be unchanged as they relate to the claims against Summit and NLC, thus this objection is applicable to both the initial and any amended complaint.

## FACTUAL BACKGROUND

On August 24, 2002, Condor's vehicle was being repaired. Her then boyfriend, Joseph Ferry, allowed her to use his vehicle to return from a visit at his home to her residence at 20 Netop Drive, Providence. By letter dated September 16, 2002, NLC ("representing Summit") confirmed that Mr. Ferry's vehicle had medical payments and underinsured motorist coverages (copy at **Exhibit "A"**).[2]

During the ill-fated return trip to Netop Drive, another motor vehicle, operated by Michael Ramos and insured by the Merchants Insurance Group, passed through a red light, causing a significant impact with the vehicle being driven by the plaintiff. Airbags deployed and Ms. Condor continues to receive treatment and evaluation for injuries related to the mishap that are most likely of a permanent nature. The third party insurer (Merchants) paid its entire policy limit and the present underinsured motorist action seeks full compensation for her injuries from the moving defendants and their co-defendant, GEICO General Insurance Company.

Interested more in relieving their potential exposure to prejudgment interest than entering into settlement negotiations, Summit/NLC "demanded" arbitration, despite the fact that the policy and Rhode Island law makes that the option of an insured, not an insurance company. As noted in the Complaints and Count VI thereof, NLC and/or Summit filed a petition in the name of a fictitious "insurance company" to compel arbitration and to stay interest in the Rhode Island Superior Court on September 6, 2007. The petition falsely stated that Condor had not made a settlement demand.[3] The petition for arbitration was denied and no appeal taken. Therefore, this is a classic abuse of process, not dependent upon the outcome of the "contract" claims that are also before the Court.

The moving defendants' Superior Court petition demanded that Condor arbitrate or file suit over her claims. It was tantamount to a complete refusal to negotiate. The petition came long after the Rhode Island Supreme Court indicated in Skaling v. Aetna, 799 A.2d 997 (RI 2002) (hereafter "*Skaling*") that it is the policy of the State of Rhode Island to encourage settlement of controversies in lieu of litigation and that an insurance company is under an equivalent duty to participate in such negotiations. None of the defendants have responded to the settlement demands that have been made by the plaintiff. None of the defendants have offered a single penny to try to settle or resolve Condor's claims. By failing to enter into any negotiations whatsoever, all defendants have failed to adhere to the admonitions of *Skaling* or the basic concept of good faith and fair dealing inherent in all contracts. This has forced Condor to seek relief and she has selected this Court as an appropriate forum to do so, based upon the diverse citizenship of the parties and requisite amount in controversy.

[2] To this day, it is unclear as to which of these insurers actually provided the policy for the Ferri vehicle. The policy "declarations" page furnished by these defendants lists only the Summit Insurance Company. Correspondence from the Smith & Brink law firm makes reference to NLC.

[3] A demand for the policy limits had been made six (6) months earlier on March 2, 2006.

## ARGUMENT

The moving defendants are correct that Rule 42(b) of the Federal Rules of Civil Procedure ("F.R.C.P.") grants this Court discretion to order separate trials to avoid prejudice or to expedite and economize the litigation procedure. Summit and NLC do not, however, mention Rule 26(b)(3)(5), relating to discovery and claims of privilege. Specifically, they fail to note that if a party seeks to withhold information by claiming that it is "privileged or subject to protection as trial-preparation material," the party making such claim must (a) expressly make the claim and describe the nature of the documents in a way that will enable other parties to assess the claim. The sole justification urged by the moving defendants seems to be outdated and superseded state procedure that is not binding upon this Court.

Defendants cite the matters of Bartlett v. Hancock Mut. Life Ins. Co., 538 A.2d 997 (RI 1988) and Corrente v. Fitchburg Mutual Fire Ins. Co., 557 A.2d 859 (RI 1989). The most significant holdings in those cases were that the Court in 1988 and 1989 felt that a plaintiff virtually had to obtain summary judgment and/or judgment as a matter of law following trial on his, her or its contract claim so as to be able to proceed with an extra-contractual "bad faith" action against an insurer. Given that "formidable" burden of proof, "bad faith" decisions were almost unheard of in this jurisdiction. Under those draconian conditions, severance of claims and the stay of all discovery was an inevitable result of such uneven "playing field."

*Skaling* abrogated that 1980s standard. It held that "certain claims of insurer bad faith are sustainable, notwithstanding the failure of plaintiff to establish entitlement to (judgment as a matter of law) on the contract claim." Furthermore, in situations when a claim is "fairly debatable" the Skaling Court held that "liability may be imposed in situations in which the (insurer) intentionally or recklessly failed to properly investigate a claim or failed to subject its investigation to an appropriate cognitive evaluation and review, or, otherwise, acted in an oppressive and unreasonable manner. Skaling 799 A.2d at 1006.

The Skaling Court further held that an insurance company has a responsibility to assemble all the facts needed for a fair and comprehensive investigation before it refuses to pay a claim, and may not base a defense to bad faith on "later acquired information." Its actions must be "judged by what was before it at the time the decision was made." (Id at 1010-1011). Finally, the Skaling Court did note that in Rhode Island claims of insurer bad faith are generally "severed and tried separately from the breach of insurance contract claim," but added the caveat that in an appropriate case, a bifurcated trial may be a useful alternative approach (Id at 1010).

The moving defendants' reliance on Taco, Inc. v. Fed. Ins. Co. is misplaced. In Taco, there was no claim for insurer bad faith. Their citation to the matter of Godhammer v. Dunkin Donuts, 59 F. Supp. 2d 248, 252 (D.Mass. 1999) is also inapposite to the matter at bar since it merely dealt with the fact that a previously-filed case in England made it more sensible to stay the entire American action to allow the English matter to proceed.

The moving defendants also rely on the cases of Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co., 735 F. Supp. 204, 208 (W.D.Pa. 1989); Schmidt v. California State Ass'n, 172 F.R.D. 182, 185 (D.Nev. 1989) and O'Malley v. United States Fidelity and Guaranty Co., 776 F.2d 494, 500-501 (5th Cir. 1985). All of these cases are from the 1980s and predate Skaling and many of the other decisions noted below. Indeed, the Schmidt case was rejected in the matter of Ring v. Commercial Union Ins. Co. 159 F.R.D. 653 (M.D. North Carolina 1995), and the O'Malley matter was rejected both as to discovery and bifurcation in the decision of Ferguson v. State Farm Insurance Company, 2007 WL 202127 (E.D.La., 2007).

Plaintiff's research has developed additional, more recent cases supporting the proposition that there should be discovery (at the very least) and (under the circumstances of this case) no bifurcation at trial. These may be enumerated as follows:

**A. Circuit Court of Appeal**

McLaughlin v. State Farm Mut Auto Ins Co. 30 F. 3d 861 (7th Cir, 1994), held that a trial court did not abuse its discretion by refusing to bifurcate the trial of a compensatory damages claim against the fire insurer from claims involving punitive damages. In McLaughlin, it was noted by District Judge Will (sitting by designation) on behalf of a unanimous court that, "I've handled at least a half a dozen cases against insurance companies such as this. Probably more. In all of those cases, the question of both actual and punitive damages has been submitted to the jury in one trial. I have not seen that there has been any prejudice either to the plaintiff or the defendant insurance company in those cases. At least one has resulted in a plaintiff's verdict for compensatory damages alone. And at least one has resulted in a plaintiff's verdict for actual and compensatory damages. So I believe, based on past experience, the jury will be able to follow any instructions and sort out the various issues." (30 F. 3d at 870-871).

**B. District Courts**

Windale, LLC v. Greenwich Insurance Co. 2003 WL 22089536 (N.D. Il. 2003) was a case that rejected the Aetna Casualty & Surety Co. case cited by the moving defendants (supra). This Court held that since the dispute is centered entirely on the amount of the loss (not the question of liability itself), and because both claims involve only post-claim negotiations or actions, the bad faith claim is "necessarily going to be tied to the contract claim." Since much of the evidence is relevant to both claims, the Court failed to see how bifurcation would avoid prejudice or promote efficiency. Additionally, the Court noted that "one of the chief complaints surrounding the bad faith

claim is (the insurer's) alleged delay in settling the claim," and under these circumstances the Court saw "no reason to further delay the potential resolution of this claim by trying the two issues separately." Finally, the Court noted that if "matters arise that could be prejudicial, we can deal with the specific issues or, for that matter, revisit this motion. 2003 WL 22089536 at note 2.

Zurich Ins. Co. v. Health Systems Integration, Inc., 1998 WL 211749 (E.D.Pa., 1998) involved an insurance company's declaratory judgment action met with counterclaims including one for "bad faith". Zurich argued that the "bad faith" counterclaims should be severed and all discovery as to such claims stayed pending a determination of the underlying coverage dispute. Pointing to Third Circuit precedent, the court noted that any party seeking bifurcation "has the burden of presenting evidence that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to the parties" (citation omitted). Bifurcation was said to be "an extraordinary remedy" that was "not to be routinely ordered" [citing Lis v. Robert Packer Hospital, 579 F.2d 819 (3d Cir. 1978)]. Zurich's argument for bifurcation being based upon the premise that it would prevail in the coverage aspect of the case merely assumed something that Zurich must prove and since Zurich "brought forward no creditable justification for either a severance or stay" its motions were denied. (1998 WL 211749 at note 3)

Williams v. Treasure Chest Casino, LLC., 1998 WL 42586 (E.D.La., 1998) was a case in which the Zurich Insurance Company filed a declaratory judgment action, asserting that claims brought against its insured (Treasure Chest Casino) were not covered by the relevant policy of insurance. In turn, Treasure Chest brought claims against Zurich for coverage and alleged "bad faith" on Zurich's part. Zurich sought bifurcation and a stay of discovery on the "bad faith" claims. The court agreed that disposition of Treasure Chest's "bad faith" claim was dependent upon the outcome of the coverage dispute. Nevertheless, it held that bifurcation would not further the interests of judicial efficiency, convenience and/or fairness. Indeed, "if Zurich's declaratory judgment action is unsuccessful, the Court will have to endure two separate, and potentially repetitive discovery processes and trials". Furthermore,

> …."bifurcation and a stay of discovery would severely restrict the parties' ability to settle their dispute. With joint discovery, the parties will be more informed and therefore prepared to participate in settlement discussions. See *Cook v. United Servs. Auto Ass'n*, 169 F.R.D. 359, 361 (D.Nev. 1996). The court also notes that Treasure Chest would be severely prejudiced by the considerable delay that would result if the court ordered separate trials with separate discovery periods (additional citation omitted)."
>
> (1998 WL 42586, note 10)

Cook v. United Services Auto Ass'n, 169 F.R.D. 359 (D.Nev. 1996) involved claims by two insureds against their insurer, in essence for breach of contract, and breach of the implied covenant of good faith and fair dealing due to the insurers' alleged failure to reasonably investigate, assess and pay claims under the policy. **The court first noted that bifurcation is a matter of federal procedural law and in diversity cases federal proceural law may be applied even though state law might require (or prohibit) bifurcated trials. Id. at 361, n. 1, citing Oulds v. Principal Mutual Life Insurance Co., 6 F.3d 1431, 1435 (10th Cir., 1993) and Sellers v. Baisier, 792 F.2d 90, 694 (7th Cir. 1986)**. Next, it held that bifurcation of the contract and "bad faith" claims for trial purposes was appropriate since the plaintiffs were required to prevail on their breach of contract claim as a prerequisite to presenting their "bad faith" contentions. On the other hand, the court refused to stay discovery relating to the so-called "extra-conractual" issues. In doing so, it noted that concurrent discovery would be more convenient to the parties, further the interests of judicial economy, better inform and prepare the parties for settlement negotiations and/or alternative dispute resolution, avoid discovery disputes, and expedite resolution of the entire matter by permitting the second trial, if needed, to commence immediately after the first trial. 169 F.R.D. at 362 (citations omitted). Left unsaid (but not necessary to the decision was the further fact that through motions *in limine* or other agreement, any discovered evidence related solely to "bad faith" issues could readily be limited or excluded from the trial of the underlying action.

Schmidt v. California State Automobile Ass'n, 127 F.R.D.182 (D.Nev., 1989) was another case in which an insurer sought a stay of discovery and bifurcation of "bad faith" claims asserted by its insured. In a thoughtful decision the court agreed that severance was appropriate since without separate trials evidence pertaining to the insured's tort claims could prejudice the insurer in its defense of the contract claims before the court. On the other hand, it refused to foreclose discovery of most of the contents of the insurers claim file despite the company's argument that this related to the extra-contractual claims and was completely privileged. In doing so, the court rejected the contention the privilege and prejudice contentions raised by the insurer. In doing so it noted that:

(a) the attorney-client privilege was limited to communications with counsel at a time and under circumstances when the attorney was "acting in the role of attorney", but this does not mean that all attorney correspondence constitutes confidential communications in the nature of legal advice;

(b) the "entire claims file" cannot be withheld on the basis of the work-product doctrine "because not all materials contained within the claims file is allowable work-product prepared in anticipation of litigation".

(c) The "majority of cases that have dealt with the issue of whether inveti-gative materials prepared by insurance claims adjusters is work-product prepared in anticipation of litigation have held that since insurance companies have a routine duty to investigate accidents, such materials are not prepared in anticipation of litigation but are

prepared in the ordinary course of business absent unique circumstances showing the contrary" (numerous citations omitted);

(d) It was not until the plaintiff's complaint was filed that "the possibility of litigation was sufficiently choate to bring materials created by the defendant (insurer) within the purview of Rule 26(b)(3)"; and

(e) The Rhode Island decision in Bartlett v. John Hancock Mutual Life Ins. Co., 538 A.2d 997 (R.I. 1988) was not applicable to material that was not privileged in the first instance.

(127 F.R.D. at 183-184)

**C. STATE COURTS**

Christiansen v. Farmers Insurance Exchange, 116 P.2d 259, 523 Utah Adv. Rep. 12 (2005) was a state court action in which arbitration was ordered with respect to the insureds' contract claims against their insurer. In addition to their arbitration claims, the insureds asserted a litigation claim for breach of the implied covenant of good faith and fair dealing inherent in every contract. In response to Farmers' request that discovery be stayed until conclusion of the contract claim, the court noted that the insurer failed to demonstrate good cause for a protective order. It underscored its reasoning by pointing out that "claims of breach of express contract (the policy) and bad faith are premised on distinct duties that give rise to divergent and severable causes of action". In other words, whereas the breach of contract claim relies on a contract's express terms, a "claim for breach of the implied covenant of good faith and fair dealing, by contrast, is based on judicially recognized duties not found within the four corners of the contract … (and) these duties are not subject to alteration by the parties". 116 P.3d at 261-262 (emphasis added). The Christiansen court contended that this "covenant imposes upon the parties a specific duty to bargain or settle in good faith", reasoning that:

> "An insured who has suffered a loss and is pressed financially is at a marked disadvantage when bargaining with an insurer over payment for that loss. Failure to accept a proffered settlement, although less than fair, can lead to catastrophic consequences for an insured who, as a direct consequence of the loss, may be particularly vulnerable, both economically and emotionally. The temptation for an insurer to delay settlement while pressures build on the insured is great, especially if the insurer's exposure cannot exceed the policy limits.
>
> (116 P.23d at 262)

Weeks v. Progressive Insurance Company 2005 WL 1792115 (R.I. Super June 23, 2005) was a case in which it was noted that Skaling has inferred that the former rule in **Correnti** concerning severance of bad faith claims may be abrogated. Therefore, a motion to sever was not yet ripe, and the Court reserved to itself the right to limit discovery as the matter proceeded. This seems to be the more modern approach being taken in the Superior Courts of Rhode Island following *Skaling*.

Hercules Inc. v. OneBeacon America Ins. Co. 2004 WL 2240993 (Del. Super. September 7, 2004), was a matter in which the trial court refused to stay discovery on a bad faith claim but did agree to sever the trial of such claim from that of the underlying contract action.

## ADDENDUM

The moving defendants raise a plethora of vague hypothetical horribles in support of their motion for severance and a stay of discovery (see defendants' memorandum at pages 3-6). These hypothetical horribles include the "possibility" of testimony from counsel and fails to point out that it is more likely that in defense of the abuse of process claim it is defense counsel who will be called as witnesses.

As noted in the numerous decisions discussed above, an insurance company is under a duty to investigate claims and that duty is not something involving "the anticipation of litigation." Indeed, these defendants are the very parties who refused to negotiate and demanded arbitration or litigation. The fact that the Superior Court action has terminated in favor of the plaintiff means that her abuse of process claim is ripe for consideration at the present time with no need to prevail in her underlying contract action.[4] It is also clear from the rambling assertions of these defendants that they have no true, articulable reason that should deny discovery (except as to truly attorney-client privileged communications), and, perhaps, whatever has occurred subsequent to the initiation of litigation in this Court.

## CONCLUSION

For these reasons and such further matters as may appear during oral argument, plaintiff respectfully suggests that this is that "appropriate case" to which the Skaling Court alluded, and requests that defendants' motion be denied in each and every respect. Furthermore, they ask that the Court direct the defendants to explain the relationship between them and exactly which company issued the policy to Mr. Ferri.

[4] The Superior Court action was brought against Condor in the name of the "New Londong Connecticut Insurance Company" by the same law firm representing the moving defendants (see exhibit 13 to plaintiff's Complaint); yet when they answered paragraph 6 of the Complaint (asserting that the "Londong Connecticut" entity was a fictitious name and/or misnomer for NLC or Summit) they disingenuously (or in bad faith) claimed to "lack knowledge or information sufficient to form a belief as to the truth of (such) averments."

Yeldeziena Condor
by her attorney,

/s/ John B. Reilly

John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, Rhode Island 02903
Tel.: (401) 272-2800
Fax: (401) 272-2811

**CERTIFICATION**

It is hereby certified that on the 2nd day of July 2008, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record received notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

Jeffrey P. Finan, Esq.
Finan & Grourke
24 Spring Street
Pawtucket, RI 02860

Ronald Langlois, Esq.
Smith & Brink
One State Street, Suite 400
Providence, RI 02903

/s/ John B. Reilly