# EXHIBIT "B"

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

NEW LONDON CONNECTICUT )
INSURANCE COMPANY )
)
v. ) PC/2007-4663
)
YELDEZEINA CONDOR )

**HEARD BEFORE THE HONORABLE JUSTICE ALLEN RUBINE**

**OCTOBER 9, 2007**

APPEARANCES:

FOR THE PLAINTIFF. . .BY: HEATHER L. MELNYK, ESQUIRE

FOR THE DEFENDANT. . .BY: ANITA FLAX, ESQUIRE

********

LISA M. REIS
COURT REPORTER

# C E R T I F I C A T I O N

I, Lisa M. Reis, hereby certify that the succeeding pages, 1-9, inclusive, are a true and accurate transcript, in the matter of Yeldezeina Condor vs. New London Connecticut Insurance Company, PC2007-4663 heard before the Honorable Justice Allen Rubine on October 9, 2007.

Lisa M. Reis, CSR
Court Reporter

THE CLERK: PC2007-4663, New London Connecticut Insurance versus Yeldezeina Condor. Please state your name for the record.

MS. MELNYK: Good morning, Your Honor. Heather Melnyk for the plaintiff, New London Connecticut Insurance Company.

MS. FLAX: Anita Flax for the defendant, F-L-A-X.

THE COURT: Okay. I have both of the insurance company's miscellaneous petitions to compel arbitration and stay interest, as well as Ms. Condor's objection or response to that motion and a reciprocal motion to dismiss and dismiss for cause.

I guess this matter -- this is an underinsured motorist issue and whether or not the arbitration clause was properly placed within the body of the insurance contracts so as to trigger the responsibility or the obligation of the insureds to go to arbitration.

MS. FLAX: Correct.

THE COURT: The insurance company wants to compel that arbitration. Miss Condor says she doesn't have to go to arbitration.

MS. FLAX: Correct.

THE COURT: What's your position on that? What's the insurance company's position and response

that Miss Condor filed?

MS. MELNYK: Well, Your Honor, we think it's -- this does result from an underinsurance claim. Miss Condor did deal with the initial court fees to $100,000. The insurance company believes that that does remedy her damages.

In addition to that, she is not the owner of this vehicle. She was operating another individual's vehicle, and it's that individual's underinsurance policy that she is seeking to receive benefits to the policy limit. She didn't sign this insurance contract. In fact, if it were her own contract, she would have signed an application. She is looking for the benefits of that underinsurance policy that in realty isn't hers, but she's allowed to take advantage of because the language in the policy allows that an individual in the motor vehicles can take advantage of the underinsurance policy. Now she's saying that the language doesn't apply to her when it comes to arbitration.

THE COURT: But you're trying to take advantage of the arbitration clause of the contract.

MS. MELNYK: Well, Your Honor, we're trying to get the case moving. I mean, we would prefer to arbitrate the matter. We think it's faster. It's easier.

THE COURT: I a hundred percent agree with you. But I can't compel the insured to arbitrate when she elects not to under the provisions of our statute.

MS. MELNYK: But the policy is very clear when it comes to arbitration, that if the parties cannot agree, then one party may request the arbitration which we have done. The statute --

THE COURT: Yeah, but -- no, no, no. Doesn't the statute provide that if it's not located immediately prior to -- if it's a contract of primary insurance and it's not located immediately prior to -- the arbitration provision isn't located immediately prior to the signature clause --

MS. MELNYK: She wouldn't have signed it anyway, Your Honor. It wouldn't have been her signatures to sign. In addition to that, she wouldn't -- even if it was her primary policy, she wouldn't have signed the contract. She would have signed simply the application.

THE COURT: Then why is she compelled to go to arbitration?

MS. MELNYK: Because the policy language that she claims to take the benefits on -- Your Honor, she wants one thing in the contract, meaning the benefits of the underinsurance limits but not the obligation to go

to arbitration. She wants one thing but not the other.

THE COURT: The obligation to go to arbitration is only enforceable by the insured in this circumstance. Not by the insurer.

MS. MELNYK: That's not what the policy language reads.

THE COURT: The statute in the State of Rhode Island reads that.

MS. MELNYK: Which statute are you referring to, Your Honor?

THE COURT: I'm referring to the statute cited by the defendant, which is 10-3-2 of the General Laws.

MS. MELNYK: That may be true, Your Honor, but in addition to that there's also Rhode Island statute 10-3-2 which states that when a policy is clearly written and expressed that -- when it's to be settled by arbitration, it shall be valid, irrevocable and enforceable.

THE COURT: What about --

MS. MELNYK: The problem here, Your Honor, is we have reached an impasse.

THE COURT: Well, I know that we've reached an impasse, and that impasse will have to be settled in this court house rather than in arbitration. It's

not -- there's no dispute resolution mechanism if I deny your motion. It's just -- a dispute resolution mechanism is the court house instead of arbitration.

MS. MELNYK: Then we ask Your Honor to stay the interest because the insurance company is actively moving and has been moving since I believe it was October of last year to move this to some sort of resolution that Miss Condor has refused to engage in. And under this statute, she would have ten years in order to bring a suit.

THE COURT: Well, can't you file a suit here to declare the insurance company's rights and obligations under the policy? In other words, you're not remediless if I choose to enforce the statute and to not compel the insured to go to arbitration.

MS. MELNYK: Well, Your Honor, we would be right back here.

THE COURT: Well, you would not be here, you would not be on this calendar. You would be on a -- I don't know, maybe you would be. I'll leave that up to you. You would be in the Superior Court and not before an arbitrator.

MS. MELNYK: That may be true, Your Honor, but nevertheless, the interest continues to run. So the plaintiff, Miss Condor, can sit on her rights and wait

for her -- the 11th hour before that ten-year statute runs and then seek to file suit.

THE COURT: Can't you beat her to the punch? Can't you immediately turn around and file a lawsuit that would ask the Court to declare your rights under this policy and that she had -- she has no rights under this policy for all the reasons that you just suggested are abundantly clear, which may or may not be true. I don't know. The merits of this dispute aren't before me. The only issue before me now is whether or not to compel arbitration.

MS. MELNYK: Well, Your Honor, we're not denying that she can claim under the underinsurance portion of the policy. That's not what's at issue. And the issue is, and my sister counsel is well aware, the issue is damages. And so here we are. I mean, we're not looking to declare any rights or otherwise.

THE COURT: So -- so you admit that she's a beneficiary under the terms of the insurance policy?

MS. MELNYK: Yes, Your Honor.

THE COURT: Oh. I thought you were trying to suggest that she wasn't. So it's just a matter of how much, if anything, is owed?

MS. MELNYK: Correct. And the arbitration would see if she's fully complete by the initial tort

feasor policy.

THE COURT: Well, you know, arbitration is a good idea.

MS. MELNYK: Indeed.

THE COURT: But the insurance company, in Rhode Island at least, I mean, they are from New London, Connecticut. Maybe they don't realize in Rhode Island if you want to be in a position to compel the insured to arbitrate these disputes, you have to resituate in the contract where you put the language. Unfortunately, that's the way the statute reads.

MS. MELNYK: If that were the case, Your Honor, that might void any number of policies.

THE COURT: It doesn't void the policy. It simply leaves the insured the right to compel arbitration, not the insured. They can agree to arbitrate. I mean, there's nothing that prevents them to agree to arbitrate. But I can't force them. Do you agree that the clause, the arbitration clause in this insurance contract, was not at the -- right above the signature line?

MS. MELNYK: It was an addendum to the entire policy, Your Honor. It was a whole -- as I included in my packet -- I don't have the signature page. But it was a whole addendum to the policy.

MS. FLAX: I have it, Your Honor.

THE COURT: What do you say about that, since it's on the last page of the addendum?

MS. FLAX: That it's a contract of adhesion. It was drawn by the insurance company. It should have put the testimony clause at the end of that and made sure that the insured was alerted to this provision as a matter of public policy.

MS. MELNYK: Your Honor, it's not a contract of adhesion. The insured can exit --

THE COURT: It's not a question whether it's a contract of adhesion or not. It's a question of where, in the body of the policy, the arbitration provision is included. We have a public policy stated in the statute here in Rhode Island. Actually it was changed, so it's only for prime -- this is primary insurance, right? It was changed so that in matters of primary insurance, there's a specific place where the arbitration clause has to be included. That's the statute. I can't change the statute.

I hear your policy argument. It's a compelling policy argument. And it probably is better to have this heard before an arbitrator, but I can't force the insureds to do that.

I'm going to deny the insurance company's motion or

petition to compel arbitration, and you may present an appropriate formal order to that effect.

MS. MELNYK: In regards to the interest, Your Honor, is --

THE COURT: I'm not going to hear this at this time.

MS. MELNYK: May we file --

THE COURT: Well, in connection with any lawsuit dealing with the merits of damages, you can raise that issue. But that's not really appropriately before me at this time. You'll present a formal order?

MS. MELNYK: Yes, Your Honor.

MS. FLAX: Shall the order read that the petition to stay interest is neither granted or denied?

THE COURT: Correct.

MS. FLAX: Thank you.

MS. MELNYK: Thank you, Your Honor.

THE COURT: You're welcome.

[OFF THE RECORD]